Filed 12/21/20  P. v. McDowell CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>WESLEY MCDOWELL, JR.,<br><br>　　Defendant and Appellant. | G058262<br><br>(Super. Ct. No. 18CF0916)<br><br>O P I N I O N |

　　　　　　Appeal from a judgment of the Superior Court of Orange County, Maria D. Hernandez, Judge. Affirmed in part, reversed in part, and remanded for resentencing.

　　　　　　Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　　　Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

　　　　　　　　　　*　　　　　*　　　　　*

A jury convicted defendant Wesley McDowell, Jr., of one count of human trafficking of a minor (Pen. Code, § 236.1, subd. (c); count 1),[1] one count of pimping a minor (§ 266h, subd. (b)(1); count 2), one count of pandering a minor (§ 266i, subds. (a)(1), (b)(1); count 3), one count of forcible rape (§ 261, subd. (a)(2); count 4), and one count of dissuading a witness by force or threat (§ 136.1, subd. (c)(1); count 6).[2] The jury also found true allegations that defendant used force or fear to commit count 1 (§ 236.1, subd. (c)(2)), defendant was armed with a firearm in the commission of counts 1, 2, and 3 (§ 12022, subd. (a)(1)), and that count 4 was committed against a victim who was a minor over 14 years old (§ 264, subd. (c)(2)). But the jury found not true allegations that defendant personally used a firearm in the commission of counts 1, 2, and 3 (§ 12022.5, subd. (a)).

The court sentenced defendant to an indeterminate term of 16 years to life plus nine years in state prison as follows: (1) 15 years to life on count 1, plus a consecutive one-year term for the firearm enhancement (§ 12022, subd. (a)(1)); (2) a consecutive term of nine years on count 4; and (3) a concurrent term of three years on count 6. The court also stayed sentences on counts 2 and 3 pursuant to section 654.

Defendant raises three issues on appeal. First, he contends the prosecutor committed misconduct during his closing argument. Second, he claims his defense counsel rendered ineffective assistance of counsel by failing to object to the prosecutor's closing argument. Third, he argues there was insufficient evidence to support his conviction on count 6 for dissuading a witness.

---

[1]     All further statutory references are to the Penal Code.

[2]     The court granted defendant's motion to dismiss a second count of forcible rape (count 5). To avoid any confusion, we refer to the counts as they were alleged and numbered in the information.

We disagree with defendant's contentions. He forfeited his claims regarding prosecutorial misconduct. But even if he had preserved the claims, the prosecutor's statements during closing argument either did not constitute misconduct or were not prejudicial. We accordingly reject defendant's ineffective assistance of counsel claim. Contrary to defendant's assertion, there also was substantial evidence from which the jury could infer defendant dissuaded the victim from reporting his criminal activity to the police. Finally, although the parties do not raise this issue on appeal, the court erred by staying counts 2 and 3 pursuant to section 654 without imposing a sentence. We accordingly remand for the court to impose sentences on those counts before staying execution of those sentences.

FACTS

In April 2018, the police stopped defendant's car as he pulled into a motel parking lot on Harbor Boulevard. M.J. was sitting in the front passenger seat, and defendant told the officer that she was his daughter. The officer spoke to M.J. outside of the car and noticed defendant stared at her the entire time. The officer believed M.J. was scared of defendant. M.J. told the officer that defendant was her uncle. After searching defendant's car and the motel room he shared with M.J., officers found a loaded gun on the front seat, a box of condoms in the trunk, and lingerie in the motel room.

Investigator Strunk, a deputy sheriff at the Orange County Human Trafficking Task Force, responded to the scene and spoke with M.J. over the course of several days. M.J., who was 17 years old, told Strunk that she worked as a prostitute for defendant. He had her work in Orange County, Los Angeles County, San Bernardino, and Las Vegas. According to M.J., defendant set the prices she charged, and she had to give the money she earned to him. To make sure she did not withhold any money, he would take her clothes off and physically search her. M.J. also told Strunk that defendant

3

slapped her "every time like [she] would say something stupid." On one occasion, he punched, kicked, and repeatedly hit her because he accused her of being gone too long with no money to show for it. Despite this treatment, M.J. told Strunk that she considered defendant to be her boyfriend.

Strunk further testified that M.J. admitted defendant had raped her. During one of Strunk's interviews with M.J., on April 5, 2018, she was joined by District Attorney Investigator McLean and Deputy District Attorney Schoenleben. M.J. told the interviewers it happened "a few times . . . whenever [she] didn't bring back enough money, that's when he would do it." She further explained: "[M]ost of the time, I didn't most of the time I told him I didn't wanna have sex, all the time I told him I didn't wanna have sex but sometimes when um, I would bring back money he would be like understanding then, then I guess we'll like talk about it and then we end up having sex but then I know when he, when I didn't bring back money he would get mad and he'll be so mad he'll just hold me down and he'll rip my clothes off of me, he'll pull my pants down, he'll be like and shove it inside of me and that's how it was, pretty much whenever I didn't bring back . . . enough money." One of the interviewers asked: "[W]hen that happened when he was doing that and he's mad, did you tell him no and it still happened?" M.J. replied: "[S]ometimes I would let it happen[ ] and, but I, while I was saying that I wouldn't, I'll tell him no like I didn't want to, I tr[ied] to put my clothes back on and yea."

At trial, M.J. denied defendant had forced her to have sex. She also claimed she never told the police that defendant forced her to have sex when she did not make money or that he ripped her clothes. M.J.'s mother testified M.J. said she had received threats from other inmates in jail, believed the threats were from defendant, and was going to lie on the stand because she was afraid.

M.J. also testified about how she became a prostitute. Before she met defendant, she had moved in with a friend who introduced her to prostitution. M.J. met defendant at the friend's apartment. Soon after, defendant drove M.J. to Las Vegas where he had her work as a prostitute.

DISCUSSION

Defendant contends certain comments by the prosecutor in his closing argument amounted to misconduct and requires reversal of the forcible rape and dissuading a witness counts. To the extent his counsel failed to object to the prosecutor's closing argument, he claims his counsel rendered ineffective assistance of counsel. Finally, he argues his conviction for dissuading a witness was not supported by substantial evidence. For the reasons below, we disagree with defendant's contentions and affirm the judgment.

*Alleged prosecutorial misconduct*

Defendant asserts the prosecutor committed misconduct during closing argument in several ways. First, defendant contends the prosecutor improperly suggested there were reasons outside the record for why law enforcement did not do a Sexual Assault Response Team (SART) exam or DNA test to corroborate M.J.'s claim that defendant raped her. By doing so, defendant argues the prosecutor testified to facts not in evidence and acted as an unsworn witness who was not subject to cross-examination. Second, he claims the prosecutor improperly told the jurors they should convict defendant of dissuading a witness because he told M.J., "I will kill you if you speak to the police," but defendant argues there was no evidence he said this. Defendant accordingly contends we should reverse his convictions for forcible rape and dissuading a witness by

force or threat.[3] But defendant forfeited these arguments on appeal because his counsel did not object to any of the instances of alleged error or request an admonition. But assuming no forfeiture, the prosecutor's comments either did not constitute misconduct or were not prejudicial.

### A. Relevant Background and the Prosecutor's Closing Argument

During closing argument, defendant's counsel argued no evidence corroborated M.J.'s testimony that defendant raped her. He claimed the failure to conduct a SART exam was "a huge red flag," indicating that Strunk did not conduct a complete investigation or did not believe M.J. when she said defendant raped her. He also noted: "There is no DNA collected. There's no torn clothing." "There's no injuries. And, of course when she came in here to court, she denied it on the witness stand."

In rebuttal, the prosecutor argued: "The rape. Let's talk about the rape quick. The rape. I don't have a text message saying, 'Hey, sorry, I raped you, by the way.' I don't. You can't hold it against [M.J.] or this case necessarily that you can't just say, well, you didn't do a SART exam, you didn't do DNA. *There may be reasons for that. We'll talk about it after trial* but right now you just get to look in these four walls and so you've got to look at what she says about the rape." (Italics added.) The prosecutor then argued M.J.'s rape claims were credible because she would have said defendant raped her every time they had sex if she was lying. Instead, the prosecutor noted M.J. said they sometimes had consensual sex while other times they did not.

With respect to the dissuading a witness count, the prosecutor argued: "I submit to you that saying, '*I will kill you if you speak to the police*,' *is dissuading a*

---

[3]     Defendant cites additional examples of alleged prosecutorial misconduct so we "understand the severity of the misconduct," but he does not argue those purported errors require reversal of his convictions. We accordingly do not summarize or address those additional examples.

6

*witness to report as a victim of the crime*. [M.J.] was actually a witness or a crime victim, so check. And the defendant knew he was trying to do that. [¶] You only say, 'I'll kill you if you talk to the police,' if you intended for them to be afraid and not talk to the police, all right. So, check. It is not a defense the fact that she actually showed up or the fact that she actually laid him out to the police. That's not a defense. I don't need to show it, I just need to show that he tried to do it, he tried to discourage her from cooperating with law enforcement." (Italics added.)

### B. The Claim Was Not Preserved for Appellate Review

"To preserve a claim of prosecutorial misconduct for appeal, a criminal defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety. [Citations.] A defendant will be excused from the requirement of making a timely objection and/or a request for admonition if either would have been futile. [Citation.] In addition, the failure to request that the jury be admonished does not forfeit the issue for appeal if an admonition would not have cured the harm caused by the misconduct or the trial court immediately overrules an objection to alleged misconduct such that the defendant has no opportunity to make such a request." (*People v. Cole* (2004) 33 Cal.4th 1158, 1201.) "A defendant claiming that one of these exceptions applies must find support for his or her claim in the record." (*People v. Panah* (2005) 35 Cal.4th 395, 462.)

Here, defendant acknowledges he did not object to any of the instances of alleged error or request an admonition. But he claims he did not forfeit any arguments on appeal because an admonition would not have cured the harm caused by the prosecutor's misconduct. According to defendant, the "bell could not be unrung" after the prosecutor had stated "there was a reason there was no scientific evidence to support the forcible rape charge . . . ." We find nothing in the record suggesting the harm, if any, caused by the alleged misconduct could not have been cured. As the People correctly note, the

7

court could have admonished the jury to only consider the evidence before it or that an attorney's statements are not evidence.

Relying on *People v. Lambert* (1975) 52 Cal.App.3d 905, defendant alternatively argues he did not forfeit any arguments because his guilt on the rape and dissuading a witness charges was "closely balanced" and the prosecutor's misconduct "contributed materially to the guilty verdicts . . . ." But this exception to the forfeiture rule articulated in *Lambert* has long been overruled. (*People v. Green* (1980) 27 Cal.3d 1, 28-34, overruled on other grounds as explained in *People v. Morgan* (2007) 42 Cal.4th 593, 607.) For the reasons discussed *ante*, defendant forfeited any alleged prosecutorial error.

Defendant alternatively argues his defense counsel rendered ineffective assistance of counsel to the extent an objection to the prosecutor's closing argument was required. The benchmark for evaluating a claim of ineffective assistance is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (*Strickland v. Washington* (1984) 466 U.S. 668, 686.) A defendant alleging ineffective assistance of counsel must meet a two-pronged test: (1) defendant must show counsel's performance was deficient; and (2) defendant must show he was prejudiced by the deficient performance. (*Id.* at p. 687.)

Here, we need not decide whether counsel's performance was deficient because defendant either has not suffered prejudice or there was no misconduct as discussed below. (*People v. Camino* (2010) 188 Cal.App.4th 1359, 1377 [court need not address both components of ineffective assistance inquiry if defendant makes insufficient showing on one]; *Strickland v. Washington*, *supra*, 466 U.S. at p. 691 ["An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"].)

### C. The Prosecutor's Comments Were Either Harmless or Did Not Constitute Misconduct

Assuming no forfeiture, defendant has not suffered prejudice with respect to one of the prosecutor's comments. With respect to the prosecutor's other complained-of statement, there was no misconduct. "'A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it "infects the trial with such unfairness as to make the conviction a denial of due process." [Citations.] In other words, the misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." [Citation.] A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'" (*People v. Clark* (2011) 52 Cal.4th 856, 960.) "A defendant's conviction will not be reversed for prosecutorial misconduct, however, unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct." (*People v. Crew* (2003) 31 Cal.4th 822, 839.)

It is improper for a prosecutor to "suggest the existence of '"facts"'" outside of the record by arguing matters not in evidence." (*People v. Woods* (2006) 146 Cal.App.4th 106, 113.) However, "[a] prosecutor may fairly comment on and argue any reasonable inferences from the evidence." (*Id.* at p. 112.) "When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)

9

Here, defendant complains about the prosecutor's comments during closing argument that "[t]here may be reasons for" the absence of DNA evidence or a SART exam and that "[w]e'll talk about it after trial . . . ." By doing so, he contends the prosecutor argued matters not in evidence. He also claims "[t]he prosecutor eviscerated [defendant's] entire argument [that M.J.'s testimony about the rape was not corroborated] by telling the jurors he would explain after the trial why [there] was no such evidence." The People do not contest the prosecutor's statements were improper. Instead, the People argue there was no reasonable likelihood the jury applied the statements in an improper way. We agree reversal is unnecessary but for a different reason.

The evidence in the instant case was not close enough for us to conclude there was a reasonable probability that defendant would have achieved a better result absent the complained-of remarks. Strunk testified she did not conduct a SART exam because M.J. "told [her] she had had sex multiple times with [defendant and] with a bunch of people" so she "didn't see that it was relevant." Strunk also testified M.J. told her several times that defendant had raped her. She explained M.J. admitted she had consensual sex with defendant on some occasions and nonconsensual sex on other occasions. For example, M.J. told Strunk that defendant had ripped and torn her underwear off on one occasion. Although M.J. testified inconsistently at trial and denied being raped by defendant, there was evidence she lied because she was afraid of defendant. Her mother testified M.J. told her that she had received threats from other inmates in jail and believed the threats were coming from defendant. Because of those threats, she told her mother she was afraid to testify against defendant and was going to lie. Under these circumstances, the evidence supporting defendant's guilt was strong, and we cannot conclude there is a reasonable probability that the prosecutor's error affected the outcome.

In any case, any error was harmless. The court's instructions clearly informed the jurors that it was up to them to decide the facts in the case based on the evidence presented (CALCRIM No. 200) and not the arguments of counsel (CALCRIM No. 222). We must presume the jury followed the court's instructions. (*People v. Osband* (1996) 13 Cal.4th 622, 714-715.) "We must also assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." (*People v. Kegler* (1987) 197 Cal.App.3d 72, 80.) The court's instructions accordingly cured any prosecutorial misconduct.

Defendant relies on *People v. Bolton* (1979) 23 Cal.3d 208, but that case does not help him. In *Bolton*, our Supreme Court concluded the prosecutor's improper statement during closing argument was harmless because any reasonable jury would have reached the same verdict in the absence of the comment. (*Id.* at pp. 214-215.) The other cases defendant cites are factually distinguishable because they do not involve statements comparable to the one made by the prosecutor in the instant case. In *People v. Kirkes* (1952) 39 Cal.2d 719, the prosecutor stated he had personal knowledge of the defendant's guilt and implied he would not have prosecuted the case if he did not believe in the defendant's guilt. (*Id.* at p. 724.) Our Supreme Court held these statements compounded the error of the prosecutor's other comments that were not based on legitimate inferences drawn from the evidence. (*Id.* at pp. 722-724.) In *People v. Hall* (2000) 82 Cal.App.4th 813, the prosecutor in effect told the jury what an uncalled witness's testimony would have been by saying he would have testified exactly like another witness. (*Id.* at p. 817.) Finally, in *Berger v. U.S.* (1935) 295 U.S. 78, the court stated the prosecutor "was guilty of misstating the facts in his cross-examination of witnesses; of putting into the mouths of such witnesses things which they had not said; of suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered; of pretending to understand that a witness had said something which he had not said and persistently cross-examining the witness upon that basis; of assuming

11

prejudicial facts not in evidence; of bullying and arguing with witnesses; and, in general, of conducting himself in a thoroughly indecorous and improper manner." (*Id.* at p. 84.) None of these cases involve statements similar to the one made by the prosecutor here.

The next complained-of statement occurred during the prosecutor's argument that defendant told M.J. he would kill her if she talked to the police. When discussing the dissuading a witness count, the prosecutor argued: "I submit to you that saying, 'I will kill you if you speak to the police,' is dissuading a witness to report as a victim of the crime." Defendant contends there was no evidence he said this. Instead, he claims he "threatened to kill her if she was 'ever to get pulled over'" by the police. According to defendant, "proof that [he] threatened her if she got pulled over has no tendency to prove he threatened to kill her if she reported crimes committed by [him]." In other words, he argues "telling [M.J.] to avoid arrest is not the same thing as telling her not to report criminal conduct to the police."

M.J. described defendant's specific threat when talking to Strunk. She told Strunk that defendant warned her "if [she] was ever to get pulled over, that [the police] were gonna take [her] to jail for a really long time, and him too, and that if he ever went to jail, and, when he would get out, that he would kill me." She further explained: "Yeah every time I'd go out, he like, 'you better not get caught. Every, every time you see a cop car, you better hide or run somewhere.'"

From this evidence, an inference could reasonably be drawn that defendant told M.J. he would kill her if she spoke to the police. By threatening to kill her if she was ever pulled over by the police and caused him to go to jail, defendant essentially threatened her to not talk to the police. In fact, he warned her to hide or run away if she ever saw the police. In other words, he did not want her to talk to the police. While M.J. recanted her statements at trial, this alone does not negate a reasonable inference that defendant threatened her if she reported their criminal conduct to the police. Instead, it

suggests M.J. was afraid of defendant after receiving threats in jail and did not want to testify against him.

Defendant relies on *People v. Fletcher* (1996) 13 Cal.4th 451 and *People v. Shipe* (1975) 49 Cal.App.3d 343, but those cases are inapposite. Neither case addressed whether the prosecutor improperly suggested facts outside the record during closing argument. In *Fletcher*, our Supreme Court held a redacted statement "will be deemed insufficient to avoid a confrontation violation if, despite the editing, reasonable jurors could not avoid drawing the inference that the defendant was the coparticipant designated in the confession by symbol or neutral pronoun." (*Fletcher*, at p. 456.) The court found the error was compounded in that case by the conduct of the prosecutor who "urged the jury to consider [one defendant's] extrajudicial statement in determining not only his guilt but [the codefendant's] as well." (*Id.* at p. 471.) In *Shipe*, the court held a prosecutor cannot, "under the guise of cross-examination, get before the jury what is tantamount to devastating direct testimony." (*Shipe*, at p. 349.) In that case, "the error was in the manner in which the witnesses were questioned" with "flagrantly suggestive questions." (*Id.* at p. 351.)

Defendant further argues "there is no evidence in the record that [M.J.] *wanted* to report [defendant] to the police." But "[a] threat need not actually deter or reach the witness because the offense is committed when the defendant makes the attempt to dissuade the witness." (*People v. Foster* (2007) 155 Cal.App.4th 331, 335.) For all the reasons discussed *ante*, the prosecutor's comments do not warrant reversal.

*Substantial evidence supporting defendant's conviction for dissuading a witness*

Finally, defendant contends there is insufficient evidence to support his conviction on count 6 for dissuading a witness because "[t]here is no evidence [he] told [M.J.] he would kill her if she spoke to the police." He accordingly claims his due

process rights were violated. We disagree. There is substantial evidence in the record supporting defendant's conviction.

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — evidence that is reasonable, credible and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403.)

"Section 136.1 prohibits, in part, any attempt to prevent or dissuade a [victim or] witness to a crime from making a report of it to a police officer." (*People v. Pettie* (2017) 16 Cal.App.5th 23, 54; § 136.1, subd. (b)(1).) "Subdivision (c)(1) of section 136.1 punishes any person who knowingly and maliciously commits this offense by force or by an express *or implied* threat of force or violence." (*Ibid.*)

"The circumstances in which the defendant's statement is made, not just the statement itself must be considered to determine whether the statement constitutes an attempt to dissuade a witness . . . ." (*People v. Wahidi* (2013) 222 Cal.App.4th 802, 806.) "If the defendant's actions or statements are ambiguous, but reasonably may be interpreted as intending to achieve the future consequence of dissuading the witness . . . , the offense has been committed." (*Ibid.*)

Here, the record includes sufficient evidence from which the jury could reasonably infer defendant dissuaded M.J. from reporting defendant's criminal activity to the police. Regardless of the prosecutor's statements during closing argument, defendant threatened M.J. that he would kill her if she was pulled over by the police and he went to jail. He also warned her to hide or run if she ever saw the police and made this threat every time she went out. The circumstances in which defendant made these statements further suggest the statements were made to dissuade M.J. from reporting their prostitution activities to the police. During the time when defendant worked M.J. as a prostitute, he punched, kicked, and choked her. When they were pulled over by the police, defendant stared at M.J. the entire time she talked to the officer who testified that M.J. appeared to be scared of defendant. M.J.'s mother also testified that M.J. was afraid of defendant and attributed threats against her by inmates to defendant. Given all of this evidence, the jury could reasonably conclude defendant dissuaded M.J. from reporting his criminal activity to the police.

*Resentencing on counts 2 and 3*

Although neither party raises the issue, we note the court erred by failing to designate the sentences stayed under section 654 for count 2 (pimping a minor) and count 3 (pandering a minor). This must be corrected upon remand. "[W]hen a trial court determines that section 654 applies to a particular count, the trial court must impose sentence on that count and then stay execution of that sentence." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1466.) Upon remand, the court must impose a sentence on counts 2 and 3 before staying the sentences under section 654.

DISPOSITION

The sentence is reversed. On remand, the court shall impose a sentence on counts 2 and 3 before staying execution of those sentences pursuant to section 654. In all other respects, the judgment is affirmed.


IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.